IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:11-CR-53 |
| | ) | *Collier/Carter* |
| STACY ALLEN | ) | |

**M E M O R A N D U M**

Alleging inaccuracies and falsehoods in an affidavit supporting a search warrant, Defendant Stacy Allen ("Defendant") moved for a *Franks* hearing[1] (Court File No. 13), which the government opposed (Court File No. 15). This motion was referred to United States Magistrate Judge William B. Mitchell Carter (Court File No. 14). Concluding Defendant had offered no evidence demonstrating the affiant made statements in the affidavit with reckless disregard for the truth or with deliberate falsity, Judge Carter recommended Defendant's motion be denied (Court File No. 16). Defendant filed an objection (Court File No. 17), and the government responded (Court File No. 18). For the reasons discussed below, the Court will **ACCEPT** and **ADOPT** Judge Carter's Report and Recommendation ("R&R") (Court File No. 16). Accordingly, Defendant's motion for a *Franks* hearing will be **DENIED** (Court File No. 13).

**I.    FACTUAL BACKGROUND**

In September 2010, Defendant resided at 2510 Laura Street in Chattanooga, Tennessee. The residence is a duplex, and Defendant lived on the right side of the duplex. On September 14, 2010,

---

[1] Under *Franks v. Delaware*, 438 U.S. 154 (1978), a criminal defendant has a Fourth Amendment right to challenge the truthfulness of factual statements made in an affidavit made in support of a search warrant after that search warrant has been issued.

Chattanooga Police Officer Christopher Palmer prepared an affidavit in order to obtain a search warrant for Defendant's residence. Officer Palmer's affidavit used to obtain the search warrant states in relevant part:

> 2. That on the 13th day of September, 2010 your affiant received information from a confidential informant.
>
> 3. The said informant advised me that within the last 72 hours said informant was on the premises of the potential defendant in this case, John Doe alias Bra b/m who resides in or occupies and is in possession of the following described premises, to wit; This being a red brick duplex with white trim located at 2510 Laura St. The door to be entered is on the right hand side when facing the duplex from Laura St. the numbers 2510 are displayed on the white trim of the duplex Chattanooga, Hamilton County, Tennessee. While there said informant saw legend and/or narcotic drugs including cocaine, the same being on said premises in the possession of and control of said John Doe alias Bra b/m.
>
> 4. The said informant further advised your affiant that John Doe alias Bra b/m is dealing a large amount of cocaine from the above mentioned address.
>
> 5. The said informant further advised your affiant that there is heavy short term traffic coming to and going from the said address.
>
> 6. Your affiant was able to corroborate some of the information provided by the said informant. Your affiant conducted surveillance and observed the heavy short term traffic coming to and going from the said address.
>
> 7. The said informant has made at least three controlled buys from the above said address for your affiant, with one of these buys occurring within the last 72 hours. The following controls were in place: Under the direction and control of your affiant, the said informant was physically checked or searched by your affiant for any type of contraband, your affiant found none on the informant who was visually monitored entering the premises. The informant conducted the hand to hand drug transaction, specifically money for cocaine. Your affiant then observed the informant leave the said premises. Your affiant, close in time thereafter personally retrieved from the informant cocaine purchased by the informant and suspected to be cocaine. Your affiant personally inspected the cocaine and found it to match in color, texture, shape, and odor the controlled substance known as cocaine. Your affiant followed appropriate procedures or safeguards which ensured that the currency supplied to the informant prior to the purchase was spent as directed, and your affiant again physically checked or searched the informant and found no other contraband on the informant. This purchase was made by the informant, the informant made no stops

or had no contact with any individuals before handing cocaine to your affiant.

8. Your affiant has known the said informant for one week.

9. The said informant has provided Detective Kimbrough information on at least five occasions in the past that have lead to the arrest and conviction of individuals in violation of gambling laws, which has been corroborated by the affiant.

(Court File No. 13, Palmer Aff., ¶¶ 2-9).

Based on this affidavit, a Hamilton County Criminal Court Judge issued a search warrant for the right-hand side of the 2510 Laura Street duplex. During the resulting search, police found various items of evidentiary value including cocaine, marijuana, and drug paraphernalia. Defendant then filed a motion seeking a *Franks* hearing.

## II. LEGAL STANDARDS

### A. Standard of Review

This Court conducts a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C).

### B. *Franks* Hearing Standard

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56. A defendant challenging the veracity of statements made in a affidavit must overcome a "heavy burden," and he must "must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth." *United States v. Bennett*, 905 F.2d 931,

934 (6th Cir. 1990) (citations omitted). Defendant must also "accompany his allegations with an offer of proof," and "provide supporting affidavits or explain their absence." *Id.* (citing *Franks*, 438 U.S. at 171). Only if the defendant meets these requirements does a court ask whether probable cause exists absent the challenged statements. *Id.*

**III.  DISCUSSION**

Defendant's objections to the R&R essentially repeat his basic arguments from his motion seeking a *Franks* hearing. He makes four objections: 1) Officer Palmer failed to confirm anyone going by the name "Bra" resided in the duplex; 2) there is no concrete proof drug purchases were made at Defendant's residence, and the confidential informant ["CI"] did not in any case identify Defendant as Bra; 3) Officer Palmer's statement that three controlled buys occurred is unfounded; and 4) the suggestion surveillance could have begun the same time Officer Palmer first met the CI is implausible. In the original motion and in lodging his objections, Defendant does not accompany his allegations with offers of proof or supporting affidavits, nor does he explain their absence. In brief, Defendant has not carried the "heavy burden" of demonstrating Officer Palmer made false statements "intentionally or with reckless disregard for the truth." *Bennett*, 905 F.2d at 934.

Defendant's first objection misses the mark because it ignores the fact Officer Palmer had received information from the CI regarding an individual named "Bra" living in the duplex (Court File No. 13, Palmer Aff.,¶ 3), and the CI had proved reliable in previous instances (*id.* at ¶ 9). It may well be the case the CI was mistaken or otherwise inaccurate in reporting this information to Officer Palmer. Given the CI's past reliability, however, Defendant has failed to show Palmer's inclusion in the affidavit of a statement that Bra lived in the duplex was knowingly or intentionally

4

false, or otherwise amounted to a reckless disregard for the truth. Moreover, Palmer subsequently corroborated the information passed to him by CI though controlled buys. Accordingly, Defendant's first objection fails.

Defendant's second objection similarly fails because it inaptly focuses the analysis on the CI. Once Officer Palmer reasonably assessed the CI's credibility, the fact the CI's information regarding whether drug purchases occurred in the duplex, or whether Defendant was in fact Bra, may have been inaccurate is largely beside the point. Defendant must instead show Palmer knowingly and intentionally included what he knew to be false in his affidavit, or was reckless in disregarding the truth. Defendant offers no reason why Palmer's reliance on the CI meets this high standard, and also fails to buttress his allegations with any affidavits (or explain their absence). *See Bennett*, 905 F.2d at 234. Defendant's second objection is thus without merit.

Defendant's third objection alleges Palmer was not truthful in the affidavit when he claimed three controlled buys had occurred under his supervision because Palmer's claim in the affidavit he received information from a CI on September 13, 2010–the same day the search warrant was obtained and executed–suggests he had only met the CI that day. In fact, however, Palmer's affidvait makes clear he had known the CI for a week (Court File No. 13, Palmer Aff.,¶ 8), and it is therefore possible two of these controlled buys occurred in the week before September 13, 2010. Defendant's only response to this argument is that it "makes no sense" (Court File No. 17, p. 2). If anything, however, it is Defendant's objection that stretches the bounds of common sense. The most straightforward reading of Palmer's affidavit on this point is that Palmer knew the CI for a week before September 13, 2010, and during that period, the CI conducted three controlled buys for Palmer, with the final purchase occurring within 72 hours of the date the affidavit was drafted. This

5

reading of the affidavit requires the Court to deny Defendant's third objection.

Finally, Defendant objects to the Magistrate Judge's finding that surveillance could have begun the same date Officer Palmer first met the CI. Specifically, Defendant characterizes this finding as a "guess," and further argues surveillance throughout this period was implausible in light of Palmer's affidavit. This objection, however, fails to address the underlying issue, namely, whether Officer Palmer has intentionally made a false or intentional statement, or otherwise recklessly disregarded the truth. Specifically, this objection fails to identify a specific false statement allegedly made with the required *scienter*. *See Bennett*, 905 F.2d at 234. The Magistrate Judge's interpretation of the affidavit on this point was indeed speculative, but such speculation does not imbue the affidavit itself with the type of intentional falsity Defendant must demonstrate to warrant a *Franks* hearing. Thus, Defendant's fourth objection must also be denied.

Defendant has failed to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155. Accordingly, the Court need not consider whether probable cause existed absent the challenged statements. *Bennett*, 905 F.2d at 934.

## IV. <u>CONCLUSION</u>

After reviewing the record, the Court finds the Magistrate Judge properly concluded Officer Palmer neither knowingly or intentionally made false statements nor recklessly disregarded the truth in preparing and submitting the affidavit supporting the search warrant. Accordingly, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 16). Defendant's motion for a *Franks* hearing will be **DENIED** (Court File No. 13).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**